IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge William J. Martínez

Civil Action No. 18-cv-3302-WJM

MIA M. TONDER, an individual,

    Plaintiff,

v.

ANDREW M. SAUL, Commissioner of the Social Security Administration,

    Defendant.

## ORDER VACATING DECISION OF ADMINISTRATIVE LAW JUDGE

This matter is before the Court on review of Defendant Commissioner of the Social Security Administration Andrew M. Saul's ("Defendant's" or "the Commissioner's") decision denying Plaintiff Mia M. Tonder's ("Plaintiff's") application for supplemental security income. Plaintiff filed an opening brief on June 17, 2019 (ECF No. 20), Defendant filed a response on August 7, 2019 (ECF No. 23), and Plaintiff filed a Reply on June 9, 2019 (ECF No. 24). For the reasons set forth below, Defendant's decision to deny Plaintiff's application for supplemental security income is vacated, and this case is remanded for further proceedings consistent with this Order.

### I. BACKGROUND

Plaintiff Mia Tonder was born in October 1967, and was 44 years old at the alleged disability-onset date of December 17, 2011. (ECF No. 14-5 at 24.) Plaintiff has completed high school and one year of community college, and is certified as a nurse's assistant. (ECF No. 14-4 at 43–44.) Plaintiff last worked in March 2011, as a part-time

nurse's assistant. (*Id.*) She additionally has held other part-time jobs, such as a cashier at two fast-food restaurants. (*Id.* at 36–37; ECF No. 14-5 at 37.)

Plaintiff applied for supplemental security income on April 12, 2015, alleging the that the following medical conditions preclude her from engaging in substantial gainful activity: chronic back pain, spondoloysis of back with stress fractures; arthritis; nerve pain; memory loss; and type 2 diabetes. (ECF No. 14-8 at 6.) A hearing in front of an Administrative Law Judge ("ALJ") was held on November 1, 2017. (ECF No. 14-4 at 28.) On January 16, 2018, the ALJ found Plaintiff to be "not disabled" under § 1614(a)(3)(A) of the Social Security Act (ECF No. 14-2 at 25), and the Social Security Administration's Appeals Council denied review of that decision (*id.* at 2). On December 12, 2018, Plaintiff appealed the ALJ's decision to this Court. (ECF No. 1.)

The administrative record indicates that Plaintiff suffered a workplace injury to her back in the year 2000 (ECF No. 14-9 at 66), and thereafter was diagnosed with degenerative disc disease of the lumbar spine/grade 1 anterolisthesis (*id.* at 73). Plaintiff alleges resulting constant and debilitating back pain. (*Id.* at 66.) Plaintiff additionally has been diagnosed with the following: obesity; diabetes mellitus; hypertension; basal cell carcinoma; mild asthma; vitamin D deficiency; esophagitis; acute hypoxemia/respiratory failure; sinus tachycardia; as well as major depression and anxiety. (ECF No. 14-2 at 13.) Medical records suggest that Plaintiff's psychiatric conditions are a result, at least in part, of the deaths of her father and husband. (ECF No. 14-9 at 78.)

## II. THE ALJ'S DECISION

The ALJ denied Plaintiff's claim for benefits in a decision dated January 16, 2018. (ECF No. 14-2 at 25.) In the sequential evaluation process required by law,[1] the ALJ found at step one that Plaintiff had not engaged in substantial gainful activity since the alleged onset date of December 17, 2011. (*Id.* at 13.)

At step two, the ALJ found that Plaintiff has the following severe impairments: degenerative disc disease of the lumbar spine/grade 1 anterolisthesis, and obesity. (*Id.* at 13.) The ALJ found the following medical conditions of Plaintiff's to be non-severe: diabetes mellitus; hypertension; basal cell carcinoma; mild asthma; vitamin D deficiency; esophagitis; acute hypoxemia/respiratory failure; sinus tachycardia; major depression; and anxiety. (*Id.* at 13.) At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1. (*Id.* at 15.)

As to the residual-functional capacity ("RFC"), the ALJ found as follows:

> [T]he claimant has the residual functional capacity to perform a reduced range of light work as defined in 20 CFR 416.967(b) except the claimant can occasionally carry 20

---

[1] The five-step process requires the ALJ to consider whether a claimant: (1) engaged in substantial gainful activity during the alleged period of disability; (2) had a severe impairment; (3) had a condition which met or equaled the severity of a listed impairment; (4) could return to her past relevant work; and, if not, (5) could perform other work in the national economy. *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); *Williams v. Bowen*, 844 F.2d 748, 750–51 (10th Cir. 1998). The claimant has the burden of proof through steps one to four; the Commissioner has the burden of proof at step five. *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007).

> pounds, and frequently carry 10 pounds.[2] She can stand and/or walk for six hours in an eight hour workday but must use a cane for standing and walking. She can sit for six hours in an eight-hour workday. She can never climb ladders, ropes, or scaffolds. She can only occasionally stoop, kneel, crouch, crawl, or climb ramps and stairs.

(*Id.* at 14–15.)

At step four, the ALJ determined that Plaintiff does not have any past relevant work. At step five, taking into account Plaintiff's age of 52 (44 at the alleged onset date), education, work experience, and RFC, the ALJ determined that there are jobs that exist in significant numbers in the national and regional economies that Plaintiff can perform. (*Id.* at 23.) Based on the hearing testimony from a vocational expert, the ALJ determined that Plaintiff could perform such jobs as "assembler of small products" (Dictionary of Occupational Titles ["DOT"] # 706.684-022), "sales attendant" (DOT # 299.677-010), and "cashier II" (DOT # 211.462-010). (*Id.* at 24.) The ALJ accordingly found that Plaintiff "has not been under a disability, as defined in the Social Security Act," from the alleged onset date of December 17, 2011 through the date of the ALJ's decision. (*Id.* at 27.)

### III. LEGAL STANDARD

The Court's review of a determination that a claimant is not disabled is limited to determining whether the record contains substantial evidence to support the Commissioner's decision and whether the correct legal standards were applied. *Hamilton v. Sec'y of Health and Human Servs.*, 961 F.2d 1495, 1497–98 (10th Cir.

---

[2] "Occasionally [means] cumulatively 1/3 or less of an 8 hour day," and "frequently [means] cumulatively more than 1/3 up to 2/3 of an 8 hour day." (ECF No. 14-5 at 32.)

1992). "Substantial evidence is more than a mere scintilla and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Grogan v. Barnhart*, 399 F.3d 1257, 1262 (10th Cir. 2005). "Evidence is not substantial if it is overwhelmed by other evidence or constitutes mere conclusion." *Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992). The Court must "meticulously examine the record as a whole, including anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." *Grogan*, 399 F.3d at 1262. However, the Court "may not reweigh the evidence nor substitute [its] judgment" for the Commissioner's. *Glass v. Shalala*, 43 F.3d 1392, 1395 (10th Cir. 1994). Additionally, "[t]here are specific rules of law that must be followed in weighing particular types of evidence in disability cases." *Reyes v. Bowen*, 845 F.2d 242, 244 (10th Cir. 1988). "Failure to follow these rules constitutes reversible error." *Id*.

### IV. ANALYSIS

Plaintiff seeks vacatur of the Commissioner's decision on two grounds: (1) the ALJ's determination of Plaintiff's RFC was erroneous; and (2) the ALJ's determination that there is a significant number of jobs in the national and regional economies that Plaintiff could perform likewise was erroneous. (ECF No. 20 at 18, 33.) The Court agrees with Plaintiff's first argument, and concludes that certain material findings made by the ALJ are not supported by substantial evidence, and therefore that the ALJ committed reversible legal error in determining Plaintiff's RFC.

**A.    The ALJ's Error**

The ALJ "gave significant weight" to the opinion of Dr. Paul H. Barrett, M.D., a

state-agency medical consultant involved in conducting Plaintiff's initial disability determination. (ECF No. 14-2 at 21.) The ALJ found Dr. Barrett's "assessment to be a correct reflection of the claimant's abilities to perform work related activities and as such, I have adopted his findings into the [RFC] as described above." (*Id.*) The ALJ "did add the use of a cane for walking and standing as the claimant's treatment notes consistently indicate that she ambulates with a cane." (*Id.*)

The ALJ's reasons for giving Dr. Barrett's opinion controlling weight were remarkably brief, and read as follows:

> Dr. Barrett's opinion is consistent with the overall medical evidence of record. For example, the claimant consistently complained about back pain, but as of November 2016, she was just then undergoing appropriate medical therapy for her chronic back pain. Dr. Sandbach noted that the claimant was applying for disability and had never done the suggested physical therapy or pain management and indicated that she was now putting forth the effort. As such, I give significant weight to this opinion.

(*Id.*)

As an initial matter, it is far from obvious what about Plaintiff's failure to undergo physical therapy and pain management until November 2016 supports the ALJ's particular determination that Plaintiff has the capacity to, for example, occasionally carry 20 pounds and frequently carry 10 pounds. To the extent the ALJ's observation in this respect serves to question Plaintiff's credibility as to the debilitating effects of her ailments, that reasoning, standing alone, fails to explain why Dr. Barrett's very specific findings as to Plaintiff's limitations were given controlling weight.

Second, an independent review of the administrative record by the Court makes clear that the ALJ's assertion that Dr. Barrett's medical opinion "is consistent with the

6

overall medical evidence of record" is not supported by substantial evidence. As such, in mischaracterizing the record and thereby failing to properly weigh the opinion of Dr. Barrett, the ALJ committed reversible legal error.

**B.     The Administrative Record**

Plaintiff is obese (ECF No. 14-17 at 15), and has been diagnosed with degenerative disc disease of the lumbar spine/grade 1 anterolisthesis (ECF No. 14-13 at 4). As a result of Plaintiff's degenerative disc disease, Plaintiff suffers from chronic back pain (ECF No. 14-4 at 42). Plaintiff testified that, because of her back pain, she can only sit uninterrupted for 15 minutes at a time, at which point she must switch to standing. (*Id.* at 45.) After 10 or 15 minutes of standing, she then must switch to sitting again. (*Id.* at 45.) Plaintiff testified that she also suffers from knee pain and numbness in her legs. Plaintiff's primary physician, Dr. Emily Sandbach, M.D., prescribed Plaintiff a cane for walking. (*Id.* at 46–47.)

Plaintiff also testified that she could only bear walking about one block, even with a cane. (*Id.* at 47.) Plaintiff testified that, because of her back pain, her legs sometimes give out and she falls. (*Id.* at 47.) She stated that she had fallen in her backyard about a week before the November 2017 administrative hearing. (*Id.* at 47.) Plaintiff also testified that she has significant problems with lifting, stating that "I can't even carry a gallon of milk effectively." (*Id.* at 50.) At that point in the hearing, the ALJ asserted that "a gallon of milk is about eight pounds. So could you do something a little less than that?" (*Id.* at 50.) Plaintiff replied, "Not for long. . . . Because it starts to hurt my back." (*Id.* at 50–51.)

7

It must be noted that there is relatively little objective medical evidence with respect to Plaintiff's physical limitations (either favorable or unfavorable to Plaintiff's case). Other than Dr. Barrett's assessment, the record shows only 1) an opinion from state-agency consultative examiner Dr. Carmen Wong, M.D., 2) treatment notes from Plaintiff's long-term physician Dr. Sandbach, 3) hospital records that are largely irrelevant to Plaintiff's disability claim,[3] and 4) a physical RFC assessment from a certified physical therapist ("CPT").

The Court concludes that, after an independent examination of these aspects of the record, and in particular Plaintiff's hearing testimony, the ALJ's finding that Dr. Barrett's opinion is consistent with the overall medical evidence of record is not supported by substantial evidence. Because this was the ALJ's only stated reason for giving Dr. Barrett's opinion controlling weight, the ALJ did not properly weigh Dr. Barrett's opinion evidence. This is reversible error. *See, e.g.*, *Drapeau v. Massanari*, 255 F.3d 1211, 1215 (10th Cir. 2001).

1. Dr. Wong's Medical Opinion

In July 2016, Plaintiff underwent a physical examination by state-agency medical examiner Dr. Wong (ECF No. 14-9 at 66.) Dr. Wong opined that Plaintiff had no limitations as to the amount of time Plaintiff could spend standing, walking, or sitting during an eight-hour workday. (*Id.* at 71–72.) Dr. Wong also opined that Plaintiff had no

---

[3] The record reflects that Plaintiff was admitted to Memorial Hospital on numerous occasions for different ailments, the vast majority of which were unrelated to her current application for disability benefits. For example, Plaintiff presented on September 10, 2015 with dental pain, and on July 9, 2016 with trouble swallowing. (ECF No. 14-9 at 22; ECF No. 14-11 at 38.)

limitations regarding the amount of weight she could carry, but that Plaintiff could only occasionally bend, stoop, squat, crouch, or crawl. (*Id.* at 72.) Dr. Wong recommended that Plaintiff use an assistive walking device, such as a four-wheel walker, for walking any distance. (*Id.* at 72.)

While Dr. Wong's opinion certainly does not help Plaintiff's case, with the exception of Dr. Wong's finding of Plaintiff's postural limitations, Dr. Wong's assessment is plainly inconsistent with Dr. Barrett's conclusion that Plaintiff does have significant limitations in her ability to stand, walk, sit, lift, and carry. Indeed, Dr. Barrett opined that Dr. Wong's "opinion is an underestimate of the severity of [Plaintiff's] restrictions/limitations."[4] (ECF No. 14-5 at 36.) If Dr. Wong and Dr. Barrett's opinions were "consistent" with each other in this case, by the same logic, they would also be consistent had Dr. Barrett found that Plaintiff was capable of "medium work," 20 C.F.R. § 416.967(c), "heavy work," *id.* § 416.967(d), "very heavy work," *id.* § 416.967(e), or even only "sedentary work," *id.* § 416.967(a).

That Dr. Barrett's opinion contrasts so starkly with that of Dr. Wong, the latter of which constitutes one of only two (other than Dr. Barrett's) medical doctors' opinions as to Plaintiff's physical limitations, seriously calls into question the ALJ's assertion that Dr. Barrett's opinion is consistent with the overall medical evidence of record. In turn, the

---

[4] It should be noted that the Tenth Circuit, in *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1162 (10th Cir. 2012), held that an ALJ's failure to weigh certain medical opinions to be harmless error, based on the fact that the opinions, like Dr. Wong's, did not support a more restrictive RFC than the ALJ ultimately found. At issue in the instant case, however, is not that the ALJ failed to weigh Dr. Wong's opinion—he did (ECF No. 14-2 at 21-22). Rather, the problem in this case is the assessment the ALJ appears to have made that Dr. Wong's opinion is consistent with Dr. Barrett's.

9

proposition that the ALJ properly weighed Dr. Barrett's medical opinion appears dubious.

2. Dr. Sandbach's Medical Opinions

The record also reflects that Plaintiff regularly received consultative examinations from her long-term physician, Dr. Sandbach, from August 2015 to September 2018. (ECF No. 14-9 at 54; ECF No. 14-3 at 2.) Dr. Sandbach treated Plaintiff for many of her ailments, including her chronic back pain, depression, hypertension, diabetes, and asthma. (ECF No. 14-10 at 15.)

On August 8, 2017, Dr. Sandbach examined Plaintiff, and noted that Plaintiff was applying for disability based on her degenerative disc disease. (ECF No. 14-10 at 2.) Dr. Sandbach noted that Plaintiff "needs to do [physical therapy] and [pain management] for her back if she is going to remain on narcotics and request Med-9 [forms for the Colorado state disability program]." (*Id.*)

Dr. Sandbach examined Plaintiff again on January 23, 2018. (ECF No. 14-3 at 49.) Her treatment notes from this visit, in relevant part, read as follows:

> [Plaintiff] [u]pset today because she has been denied four times now for disability for her chronic [lower back pain]. Encouraged her to return to work, she stopped working in 2014 when caring for spouse with terminal cancer, she decided during that period that she was disabled from her back pain and unable to return to work. She needs to stop "living" her back pain, discussed today that this will be chronic with flares and she will never have "zero pain," that she needs to remain active and rejoin the work force, this will actually help her. I do not think she believes me, but it needed to be said again.

(*Id*. at 49–50.)

On March 6, 2018, Plaintiff again met with Dr. Sandbach. With respect to

Plaintiff's back issues, Dr. Sandbach's treatment notes read as follows:

> MRI showed no change, and some improvement. She has been denied disability and I declined to sign a Med-9 form. She needs to get back into the work force. . . . She has done [physical therapy] as well as [pain management]. She is "living" her back pain and believes she needs surgery. . . . Obviously I defer that to the surgeons. If she is not a surgical candidate (or even if she is) she needs to hear again and from multiple sources that she is not medically disabled due to her back issues[;] nobody is asking her to work construction, but she is able to work.

(*Id.* at 45.)

Similarly, treatment notes from Plaintiff's May 24, 2018 consultation with Dr. Sandbach read as follows:

> Patient is requesting a handicap placard, which I have declined to do. She is not disabled/handicapped. She needs to walk in parking lots to lose weight, which would help her chronic pain, diabetes, strength and endurance. Explained to [Plaintiff] that disabled is in a wheelchair, people with severe heart and lung disease, patients with severe neurological disease; given examples such as ALS, paraplegia, cerebral palsy with severely abnormal gait, patients with end stage heart or lung disease with hypoxia on chronic oxygen. I know she has pain, I accept that. But this is not a disability or handicap requiring special parking privileges.

(*Id.* at 33.)

Dr. Sandbach's treatment notes from a July 18, 2018 consultation with Plaintiff read as follows: "I again declined to sign her handicap placard, she told me her disability lawyer 'said just to back date it.' I had to remind her that I declined to sign that in May[;] it was not an issue of not having a form on hand[;] she is not disabled to the extent that she needs a handicap placard." (*Id.* at 26.) And as to a September 18, 2018 visit with Plaintiff, Dr. Sandbach in her treatment notes wrote: "I have declined to

11

fill out the form for a handicap placard, as I believe she needs to walk, and as I have told [Plaintiff], I do not consider her back problem a disability." (*Id.* at 2–3.)

To be sure, one might read the opinions of Dr. Sandbach and wonder how this Court could possibly fail to affirm the decision of the ALJ that Plaintiff is not disabled. But the pertinent question at this stage is not whether Dr. Sandbach's opinion that Plaintiff is "not disabled" is ultimately correct; instead, it is whether Dr. Sandbach's opinions are consistent with Dr. Barrett's, and ultimately, therefore, whether the ALJ properly weighed Dr. Barrett's medical opinion. Indeed, Dr. Sandbach's repeated pronouncements that Plaintiff is "not disabled" is far from dispositive, as this is a legal conclusion the determination of which is normally entrusted to the Commissioner. *See* 20 C.F.R. § 416.920; *cf. Houseman v. Colvin*, 2015 WL 6660190 (D. Colo. Nov. 2, 2015) (ordering an immediate award of benefits).

The record reflects that Dr. Sandbach simply did not opine as to the extent to which Plaintiff could lift, carry, stand, or sit during a normal eight-hour workday. (*See* ECF Nos. 14-3; 14-4; 14-9.) Dr. Sandbach did opine, in refusing to sign a handicap placard, that it would be in Plaintiff's medical interest to walk in parking lots. But the assertion that this is consistent with Plaintiff's ability to stand or walk for *six hours* during an eight-hour workday is highly questionable.

Moreover, while one might reasonably view Dr. Sandbach's failure to opine on the amount of weight Plaintiff could carry during the workday, or to opine on Plaintiff's postural limitations, as being *not inconsistent* with Dr. Barrett's assessment, to suggest that one person's opinion on a topic is consistent with the *lack* of another's opinion on

12

the same topic would be disingenuous. Thus, the notion that Dr. Barrett's assessment of Plaintiff's RFC is consistent with Dr. Sandbach's medical opinion is, again, dubious at best.

3. <u>Vanguard Briargate Physical Therapist</u>

On October 19, 2017, a certified physical therapist ("CPT") produced a "Medical Assessment of [Plaintiff's] Ability to do Work-Related Activities (Physical)." (ECF No. 14-17 at 17–20). The CPT opined that due to Plaintiff's back pain and muscle spasms arising out of Plaintiff's degenerative disc disease and "post[erior] annular bulge with tear," she would be limited to, at a maximum, occasionally (*i.e.*, from very little up to 1/3 of an eight-hour workday) lifting or carrying 10 pounds, and frequently (*i.e.*, from ½ to 2/3 of an eight-hour workday) lifting or carrying 5 pounds. (*Id.* at 17.) The CPT also opined that, due to Plaintiff's above-mentioned medical issues, she could only stand without interruption for less than an hour in an eight-hour workday. (*Id.* at 18.) The CPT opined that Plaintiff could only occasionally climb, balance, stoop, and crouch, and that Plaintiff should never kneel or crawl. (*Id.* at 18.) From this it is quite clear that the CPT's RFC assessment is fundamentally at odds with that of Dr. Barrett.

4. <u>Summary</u>

In sum, the three assessments of Plaintiff's physical limitations outlined above, taken alone or considered together, do not constitute substantial evidence to support the ALJ's finding that Dr. Barrett's RFC assessment is consistent with the overall medical evidence of record. Thus, by mischaracterizing the administrative record—and given the absence in the ALJ's decision of any other legitimate reasons for why he gave Dr. Barrett's opinion such significant weight—the ALJ failed to properly weigh Dr.

13

Barrett's medical opinion.

### 3. Harmless Error

As to whether the ALJ's errors as outlined above are "harmless," preliminarily, the Tenth Circuit has cautioned that, if the exercise of harmless-error analysis in a non-adversarial administrative setting such as this is "too liberally embraced, it could obscure the important institutional boundary preserved by [*Drapeau*, 255 F.3d 1211]'s admonition that courts avoid usurping the administrative tribunal's responsibility to find the facts." *Allen v. Barnhart*, 357 F.3d 1140, 1145 (10th Cir. 2004). The Court is also wary of "violating the general rule against post hoc justification of administrative action recognized in [*Securities & Exchange Commission v. Chenery Corporation*, 318 U.S. 80 (1943)]. *Id*.

Were the Court to engage in a harmless-error analysis in this case, it would seem to require the following inquiry: despite the ALJ's failure to properly weigh Dr. Barrett's medical opinion, could any reasonable administrative factfinder have found an RFC different than that found by the ALJ? The Court declines to engage in this fact-dependent exercise in evidence-weighing. *See Allen*, 357 F.3d at 1145. To the extent the ALJ applies the correct legal standards, and properly weighs all relevant medical evidence before him, the ALJ on remand is far better suited than this Court to make an assessment of Plaintiff's RFC.

Because the Court finds that the ALJ's failure to properly weigh Dr. Barrett's opinion requires remand, it will not address the other argument raised by Plaintiff. *See Madrid v. Barnhart*, 447 F.3d 788, 792 (10th Cir. 2006) (when the ALJ's error affected

14

the analysis as a whole, court declined to address other issues raised on appeal); *Watkins v. Barnhart*, 350 F.3d 1297, 1299 (10th Cir. 2003) ("We will not reach the remaining issues raised by appellant because they may be affected by the ALJ's treatment of this case on remand."). The Court expresses no opinion as to Plaintiff's second argument and neither party should take the Court's silence as tacit approval or disapproval of how the evidence was considered. The Court does not intend by this opinion to suggest the result that should be reached on remand; rather, the Court encourages the parties as well as the ALJ to consider the evidence and the issues anew.

## V. CONCLUSION

In accordance with the foregoing, the Court ORDERS as follows:

1. The decision of the Commissioner to deny Plaintiff's application for supplemental security income is VACATED; and

2. This case is REMANDED for further proceedings consistent with this Order.

Dated this 10th day of January, 2020.

BY THE COURT:

William J. Martínez
United States District Judge